UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JAMES ZAVAGLIA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 14-cv-13924-IT |
| | * | |
| BOSTON UNIVERSITY SCHOOL OF MEDICINE, | * | |
| | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM AND ORDER

January 8, 2018

TALWANI, D.J.

I.  Introduction

Plaintiff James Zavaglia alleges that his former employer, Defendant Boston University School of Medicine,[1] violated the Americans with Disabilities Act, 32 U.S.C. § 12101, *et seq.*, ("ADA") by denying Plaintiff a reasonable accommodation and by retaliating against him for protected activity. Defendant's Motion for Summary Judgment [#72] establishes that there are no genuine disputes as to the material facts and that Defendant is entitled to judgment as a matter of law. Accordingly, Defendant's motion is ALLOWED.

II.  Factual Background[2]

Plaintiff started working as an Instructional Technology Specialist ("specialist") in

---

[1] Boston University School of Medicine, one of Boston University's sixteen schools and colleges, is not a separate legal entity. "Trustees of Boston University" is the proper Defendant.

[2] Unless otherwise indicated, these facts are from the parties' Local Rule 56.1 statements and responses. The facts are undisputed or not properly disputed, see Fed. R. Civ. P. 56(c), (e)(2), or where there are genuine disputes, are construed in the light most favorable to Plaintiff, as the nonmovant. See Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

Defendant's Education Media Center in 1998. Def.'s Statement of Undisputed Material Facts ["Def.'s Facts"] ¶¶ 1, 2 [#73]. This job required him to set up, troubleshoot, operate, maintain, and break down instructional technology used during classes, meetings, seminars, conferences, and other events. Id. at ¶¶ 5, 6. Events requiring technology set up and assistance take place at the School of Medicine throughout the day, and typically start on the hour or half hour, with a ten-minute window of time between the end of one event and the start of the next. Id. at ¶¶ 10, 11.

Six specialists worked for the Education Media Center throughout the day in staggered shifts: two from 7:30 a.m. to 4:00 p.m., one from 8:00 a.m. to 4:30 p.m., one from 8:30 a.m. to 5:00 p.m., one from 10:30 a.m. to 7:00 p.m., and one from 1:00 p.m. to 9:30 p.m. Id. at ¶ 11. Throughout the duration of his employment, Plaintiff worked the 10:30 a.m. to 7:00 p.m. shift. Def.'s Facts ¶ 3. Some days, the number of events requiring setups exceeded the number of available specialists, requiring on-duty specialists to perform setups for multiple events starting at the same time. Id. at ¶ 13. The services the Education Media Center provides are time dependent, and on-time arrival was an "essential function" of the job. Id. at ¶¶ 9, 12; Def.'s Facts Ex. 1 ["Zavaglia Dep."] 38:12-24 [#73-1].

Plaintiff began regularly arriving late for his shift in 2011. Def.'s Facts ¶ 13; Zavaglia Dep. 49:3-7. When Plaintiff arrived late, another specialist had to assume responsibility for his setups. Def.'s Facts ¶ 21; Zavaglia Dep. 48:2. In June and July of 2011, one of Plaintiff's supervisors met with him to discuss his tardiness, and Plaintiff assured his supervisors that he would do a better job of arriving on time. Def.'s Facts ¶ 14; Zavaglia Dep. 50:19. In October 2011, Plaintiff's supervisors, Lucy Milne and Kirsten Martin, warned Plaintiff that this tardiness could subject him to discipline. Id. at ¶ 16. Milne and Martin sent Plaintiff a warning letter

describing how Plaintiff's late arrivals were making it difficult to assign staffing resources. Def.'s Facts Ex. 3 ["October 2011 Written Warning"] [#73-3]. The letter informed Plaintiff that he was expected to be at work by the start of his shift at 10:30 a.m., that his timeliness would be reviewed weekly, and that if he continued to arrive late to work, Defendant would take further disciplinary action, up to and including termination. Id.

Plaintiff subsequently requested intermittent leave pursuant to the Family and Medical Leave Act ("FMLA"). Def.'s Facts ¶ 16; Zavaglia Dep. 53:10. In support of his request, Plaintiff submitted a physician's certification explaining that Plaintiff needed to take time off for three appointments per month, each lasting two to three hours, to receive medical treatment for a work-related back injury. Def.'s Facts Ex. 4 ["2011 FMLA Certification"] [#73-4]. Defendant granted this request. Def.'s Facts ¶ 16. An employee in Defendant's Human Resources Department met with Plaintiff in December 2011, and directed Plaintiff to notify his supervisor prior to 10:00 a.m. when he was going to be late due to FMLA leave and to inform that supervisor of an accurate arrival time. Def.'s Facts ¶ 18; Def.'s Facts Ex. 2 ["Lucy Milne Affidavit"] ¶ 14 [#73-2]; Zavaglia Dep. 94:13.

In June and July 2012, Martin and Milne met with Plaintiff to discuss his tardiness. Zavaglia Dep. 100:12. In August 2012, Plaintiff submitted another FMLA intermittent leave request. With the request, Plaintiff submitted a chiropractor letter stating, "[Plaintiff] claims that it is taking him extra time getting moving in the morning. He has difficulty with use of his left shoulder and movement of the neck." Def.'s Facts Ex. 5 ["2012 FMLA Certification"] 2 [#73-5]. The letter stated that intermittent leave may be necessary, as Plaintiff "may have difficulty getting into work and lifting." Id. at 3. In an email responding to the request, Defendant's Human Resources Consultant stated that Plaintiff would be permitted this leave so long as he complied

3

with the established notification procedures. Def.'s Facts Ex. 6 ["Jill Jacobs Email"] [#73-6].

Martin and Milne met with Plaintiff again in November 2012 to discuss his tardiness. Zavaglia Dep. 99:21. They provided Plaintiff with a warning letter listing sixteen instances between September 19 and October 25, 2012, in which he either called after 10:20 a.m. to say he would be late or failed to call altogether. Def.'s Facts ¶ 20; Def.'s Facts Ex. 7 ["November 2012 Written Warning"] [#73-7]. On several occasions, Plaintiff stated that he was late as a result of traffic. Id. The November 2012 Written Warning informed Plaintiff that Defendant would continue to accommodate his FMLA intermittent leave, but would hold him accountable "for excessive non-FMLA related tardiness." Id. It further reminded Plaintiff that when he was going to be late, he needed to inform his supervisor prior to 10:00 a.m. and provide an accurate arrival time. Id.

At the November 2012 meeting, Plaintiff also informed his supervisors that he would be requesting a disability accommodation for his back injury. Def.'s Facts ¶ 23. Plaintiff submitted this request in writing to Defendant's Equal Opportunity Office on December 13, 2012. Def.'s Facts ¶ 23; Def.'s Facts Ex. 9 ["Accommodation Request"] 2 [#73-9]. He requested a half hour to an hour adjustment to his work schedule, permitting him to arrive between 11:00 a.m. and 11:30 a.m. Id.; Zavaglia Dep. 71:5-6. Plaintiff submitted a note from his chiropractor stating that Plaintiff needed to "adjust his work schedule to accommodate an exercise program to maintain functionality and chiropractic care." Def.'s Facts ¶ 25.

Eleanor Druckman, the Assistant Director of Defendant's Equal Opportunity Office, met with Plaintiff to discuss his accommodation request in early 2013. Def.'s Facts ¶ 26. Druckman requested more information from Plaintiff's medical provider in support of the request. Zavaglia Dep. 76:12-13. In response, Plaintiff provided another note from his doctor. Def.'s Facts Ex. 11

["March 2013 Chiropractor's Note"] [#73-11]. The new note stated that Plaintiff "insists that he has to perform the exercises in the morning because it allows him to loosen up which therefore allows him to stand, walk, bend, lift and carry which are integral parts of his work activities." Def.'s Facts ¶ 28. The note also stated that, according to Plaintiff, this morning exercise routine took between sixty and ninety minutes to complete. Id. at ¶ 29.

On April 4, 2013, Druckman informed Plaintiff that his medical documentation was insufficient to show that a later start time was necessary to enable Plaintiff to perform the essential functions of his job. Id. at ¶ 32; Def.'s Facts Ex. 12 ["Accommodation Denial Letter"] [#73-12]. Druckman wrote that the chiropractor's note "did not state why a slightly later schedule, beginning at 11:00 a.m. rather than 10:30 a.m., is necessary for you to perform the essential functions of your job. The need for you to perform exercises for 1 ½ hours in the morning does not reflect a need for a particular schedule." Id. Druckman's letter denying Plaintiff's accommodation request also noted that Plaintiff had not applied for a recent vacancy in the 1:00 p.m. to 9:30 p.m. shift, which would have provided Plaintiff with more time in the morning to complete his exercises and then travel to work. Def.'s Facts ¶ 33.

In May 2013, Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). Id. at ¶ 46; Zavaglia Dep. 160:16-20. In August 2013, he filed a charge of disability discrimination and retaliation with the Massachusetts Commission Against Discrimination ("MCAD"). Def.'s Facts Ex. 19 ["MCAD Charge"] [#73-19].

Plaintiff continued to arrive late for his shift through 2013 and early 2014. Zavaglia Dep. 110:16. In March 2013, his supervisors compiled a list of twenty-one days in January, February, and March 2013 when Plaintiff failed to arrive on time for his shift and also failed to notify his supervisor prior to 10:00 a.m. that he would be late. See Def.'s Facts Ex. 8 ["March 2013

Email"] [#73-8]. Between March 28 and April 23, 2014, Plaintiff arrived late and failed to provide an accurate arrival time on eight occasions, according to Defendant's unrebutted records. Def.'s Facts ¶ 40. Defendant issued Plaintiff a third written warning on April 29, 2014. Id.

At several times in 2014, Plaintiff submitted additional medical documentation in support of his request for a disability accommodation. This included a March 4 note from his osteopath stating that it was medically necessary for Plaintiff to walk and stretch every half hour away from his desk, as well as a June 30 note from the osteopath noting that Plaintiff should not remain seated for more than thirty minutes at a time. Id. at ¶¶ 34, 35. Neither of these notes stated that these medical issues required the schedule change Plaintiff requested. Id.

On June 26, 2014, Defendant issued a final written warning letter to Plaintiff. Id. at ¶ 41. This letter reiterated the procedures Plaintiff needed to follow when he was going to arrive late for work. Id. at ¶ 43. Plaintiff's supervisors met with him five more times after the final written warning to discuss his failure to arrive at work on time or comply with the notification procedures. Id. at ¶ 45. Defendant fired Plaintiff on October 7, 2014. Id.

IV.     Discussion

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Review of a summary judgment motion requires the court to "draw all reasonable inferences in the light most favorable to the nonmovant." Cabán–Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 8 (1st Cir.2007). Nonetheless, "[t]here is no genuine dispute of material fact when the moving party demonstrates that the opposing party has failed 'to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" EEOC v. Kohl's Dep't Stores, Inc., 774 F.3d 127,

131 (1st Cir. 2014) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). A party must support any assertion of a genuine factual dispute by citing to "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); see also Cabán–Hernández, 707 F.3d at 7-8.

    A. *Failure-to-Accommodate Claim*

Plaintiff claims he has a disability, including a "back injury and other detrimental medical issues," that "requires a certain work schedule which the Defendant rejected." Am. Compl. ¶¶ 5, 6 [#35]. Under the ADA, it is unlawful for an employer to "discriminate against a qualified individual on the basis of disability," which includes not making reasonable accommodations. See 42 U.S.C. § 12112(b)(5)(A). For purposes of this motion, Defendant does not contest that Plaintiff is disabled. See Def.'s Mem. in Support of Mot. Summ. J. 9 n.4 [#74]. It is undisputed that Plaintiff requested a half-hour to one-hour adjustment to his schedule and that Defendant denied this request. Defendant contends that Plaintiff's requested accommodation was neither tied to his disability nor reasonable.

To survive summary judgment, Plaintiff "must produce enough evidence for a reasonable jury to find that (1) he was able to perform the essential functions of the job with or without a reasonable accommodation, and (2) [Defendant], despite knowing of [Plaintiff's] disability, did not reasonably accommodate it." Freadman v. Metro. Prop. & Cas. Ins. Co., 484 F.3d 91, 102 (1st Cir. 2007) (quoting Rocafort v. IBM Corp., 334 F.3d 115, 119 (1st Cir. 2003)). An accommodation request "must explain how the accommodation is linked to plaintiff's disability." Jones v. Nationwide Life Ins. Co., 696 F.3d 78, 89 (1st Cir. 2012). "[T]o prove 'reasonable accommodation,' a plaintiff needs to show not only that the proposed accommodation would enable [him] to perform the essential functions of [his] job, but also that, at least on the face of things, it is reasonable for the employer under the circumstances." Reed v. LePage Bakeries,

7

Inc., 24 F.3d 254, 259 (1st Cir. 2001).

Plaintiff fails to meet his burden. The accommodation request and the physicians' letters do not explain why Plaintiff's disability required a later start time. Insofar as the letters request a schedule change, those letters do not explain why Plaintiff was unable to address his medical needs prior to the start of his scheduled shift. The documents also do not offer a medical provider's opinion, but instead simply reiterate Plaintiff's opinion as to his need for a later start time.

Plaintiff contends in his opposition papers that he was suffering from other disabilities, including diabetes, a heart condition, and asthma. Plaintiff explained in his deposition that he was unable to wake up early enough to do his exercises for his back before work because of his sleep apnea. Yet Plaintiff made no reference to his sleep apnea in his accommodation request. Zavaglia Dep. 80:5-10, 80:25. His diagnoses for each of these conditions occurred after his employment with the Defendant ended, and Plaintiff admits that he did not request an accommodation for these disabilities. See Zavaglia Dep. 60:17-61:11. There is no evidence that Plaintiff made Defendant aware of these newly alleged disabilities. Therefore, Defendant is not liable for failing to accommodate them. Estades-Negroni v. Assocs. Corp. of North America, 377 F.3d 58, 64 (1st Cir. 2004) (citing Reed, 244 F.3d at 261).

Even if Plaintiff had established that he needed a later start time based on his medical condition, his claim would still fail because he has not shown that his demand that the employer create a new shift, commencing at 11:00 a.m. or 11:30 a.m., was reasonable. Plaintiff admits that he chose not to apply for the position commencing at 1:00 p.m. Zavaglia Dep. 87:16-21. He states multiple reasons for his decision not to apply, including that one doctor told him that he needed to maintain a regular sleeping schedule. Id. at 88:2-9, 89:17-23, 92:4-5. At the time

Plaintiff was requesting a disability, however, Plaintiff failed to provide Defendant with any reason that his disability prohibited him from working the 1:00 p.m. shift.

Because Plaintiff fails to meet his burden to show that Defendant denied a reasonable request for a disability accommodation, Defendant is entitled to judgment as a matter of law on Plaintiff's failure-to-accommodate claim.

B. *Retaliation Claim*

Plaintiff argues next that he was retaliated against for engaging in the following protected conduct under the ADA: (1) requesting a disability accommodation in late 2012; and (2) filing a charge of disability discrimination with the EEOC in July 2013. To survive summary judgment on his retaliation claim, Plaintiff must first make out a *prima facie* case of ADA retaliation by showing that "(1) [he] engaged in protected conduct, (2) [he] suffered an adverse employment action, and (3) there was a causal connection between the protected conduct and the adverse employment action." Freadman, 484 F.3d at 106. Defendant concedes that Plaintiff engaged in ADA-protected conduct by requesting an accommodation and filing the EEOC charge, and that Plaintiff suffered an adverse action when Defendant terminated Plaintiff's employment on October 7, 2014. Defendant contests, however, that there is any causal connection between the protected activity and termination.

The October 2014 termination was temporally remote from the November 2012 disability accommodation request and the July 2013 filing of EEOC charges. See Abril-Rivera v. Johnson, 806 F.3d 599, 609 (1st Cir. 2015) (more than fourteen months between EEO complaint and adverse action was too long to support inference of causation); Morón–Barradas v. Dep't of Educ. of Commonwealth of P.R., 488 F.3d 472, 481 (1st Cir.2007) (eight-month gap between protected activity and adverse action is "insufficient to establish temporal proximity"). "Without

some corroborating evidence suggestive of causation . . . a gap of several months cannot alone ground an inference of a causal connection between a complaint and an allegedly retaliatory action." Ahern v. Shinseki, 629 F.3d 49, 58 (1st Cir. 2010). Plaintiff produces no corroborating evidence, either circumstantial or direct, to suggest causation.

Even assuming Plaintiff somehow made out a *prima facie* case of retaliation, his retaliation claim still fails as a matter of law on the remaining elements. If a plaintiff makes out a *prima facie* case, the burden shifts to the employer "to offer a legitimate, nonretaliatory reason for [its] actions." Collazo-Rosado v. Univ. of P.R., 765 F.3d 86, 92 (1st Cir. 2014). According to Defendant, it terminated Plaintiff for his persistent failure between June 2011 and October 2014 to arrive on time for the start of his 10:30 a.m. shift or to notify his supervisors by 10:00 a.m. that he would be late and provide an accurate arrival time. With this reason articulated, the burden returns to the employee to prove that his employer's reason was mere pretext. Id.

Plaintiff does not dispute that he frequently was late for his 10:30 a.m. shift and that this meant setups occurred late. Zavaglia Dep. 47:7-48:6. He asserts that he was on FMLA leave for a work-related injury. Pl.'s Facts ¶ 19. This response is beside the point. There is no evidence in the record that Defendant penalized Plaintiff for those hours when he was on FMLA leave, and Plaintiff admits that Defendant accommodated his right to FMLA intermittent leave. Zavaglia Dep. 107:8. And while Plaintiff contends that he "tried to" comply with the notification procedures, he admits that he sometimes failed to do so. Id. at 98:13, 102:18. The record shows that the employer repeatedly warned Plaintiff that this conduct would result in termination, to no avail. On this undisputed record showing the employer's care not to penalize legitimate absences and its clear warnings as to expected conduct and consequences, no reasonable jury could find that the termination here was pretextual. Quite simply, Plaintiff provides no factual support for a

claim of pretext. Accordingly, Defendant is entitled to summary judgment on the retaliation claim.

V.	Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment [#72] is ALLOWED.

IT IS SO ORDERED.

January 8, 2018	/s/ Indira Talwani
	United States District Judge